FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

SEP 1 6 2015

DAVID J. MALAND, CLERK
BY
DEPUTY_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 6:15-CR-58 |
| | § | MHS/KNM |
| RONALD RUSSELL a/k/a "Petey"(1); | § | |
| MARCUS CHUKWU (2); | § | |
| LIZZY SIRLS (3); | § | |
| YULANDA NASH a/k/a "Sugar Momma" (4); | § | |
| LATOSHA GRAY a/k/a "Tasha" (5); | § | |
| PANDRA WADE (6); | § | |
| TAMMY WASHINGTON (7); | § | |
| VICTORIA STERNS (8); | § | |
| SHENEKI MCCOLLISTER (9); | § | |
| NICHELLE FOFANA (10); | § | |
| KATRINA WATTS (11); | § | |
| and MEOSHE GOODWIN (12). | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

### Medicare Program

1.     The Medicare Program ("Medicare") is a federal health care program providing benefits to persons who are over the age of 65 and some persons under the age of 65 who are blind or disabled.  Medicare is administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United States Department of Health and Human Services (HHS).  Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries."

Indictment – Page 1

2.     Medicare is a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it is a public plan affecting commerce under which medical benefits, items, and services are provided to individuals and under which individuals and entities who provide medical benefits, items, or services may obtain payments.

3.     Medicare is a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f), in that it is a plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government.

4.     CMS contracts with private organizations called "intermediaries" to receive, adjudicate, and pay Medicare claims that are submitted by approved health care providers.  CMS has contracted with Palmetto GBA (a subsidiary of Blue Cross Blue Shield of South Carolina) to be the intermediary for Texas and 13 other states.

5.     As part of its contract, Palmetto GBA is also required to process the applications of home health care agencies seeking to enroll in the Medicare program to provide home health services.

6.     Home health services are provided by licensed medical professionals at a patient's residence and are paid for as "Medicare Part A" payments through Medicare's Hospital Insurance program.  Examples of home health services include:  intermittent skilled nursing services, physical therapy, and speech-language pathology.  Skilled

nursing services include the monitoring of blood sugar levels and the daily administration of insulin to insulin-dependent diabetic Medicare beneficiaries.

7.     A home health care agency seeking to enroll in Medicare is responsible for the accuracy of all information in its application.  If approved, the home health care agency is issued a unique provider number.  This provider number must appear on all claims that the agency submits for payment.

8.     Contained in the provider manual are the requirements of 42 CFR § 409.42, which mandates that all of the following requirements must be met for home health services to be covered and reimbursable by Medicare:

    a.     The beneficiary must be confined to the home or an institution that is not a hospital;

    b.     The beneficiary must be under the care of a physician who establishes the plan of care;

    c.     The beneficiary must be in need of skilled services such as intermittent skilled nursing services, physical therapy, speech-language pathology service, or continuing occupational therapy services;

    d.     The patient must be under a plan of care that meets the requirement specified in section 409.43, specifying the medical treatments to be furnished as well as the type of home health discipline that will

furnish the ordered services and at what frequency the services will be furnished; and

e.      The home health services must be provided by, or under arrangements made by, a Medicare-approved home health agency.

9.      Effective April 1, 2011, CMS initiated a new requirement for Medicare beneficiaries who are admitted for home health services.  Prior to admission, or within 30 days following admission, the certifying physician must see the beneficiary "face-to-face" and document the encounter on a certification form that is provided to the agency. The agency must have this completed form on file prior to submitting a claim for the period.

10.      To determine the proper level of care for a patient and ultimately the amount of payment a home health care agency will receive, Medicare requires that home health care agencies perform a comprehensive assessment of the patient that accurately reflects the patient's current condition and provides information to measure his or her progress.  In making this assessment, home health care agencies are required to complete a form called the Outcome and Assessment Information Set (OASIS).

11.      With limited exceptions, the OASIS assessment must be completed by a Registered Nurse who completes a detailed checklist after examining the prospective patient.  Among other things, the OASIS contains a projection of the minimum number and type of treatments the patient will need through home health care.  The number of

home health care visits is used to determine the compensation to the home health care agency.

12.     The OASIS information is then used to create a Plan of Care (CMS Form 485).  The Plan of Care specifies the frequency of home health visits and describes the services to be provided to the patient.  A physician must sign the CMS Form 485, certifying that home health care is necessary and that he or she has approved the Plan of Care.

13.     Since October 2000, Medicare has compensated home health care agencies using the "Prospective Payment System" (PPS).  PPS is a split-payment approach based upon 60-day time periods.  For each episode of care, the home health care agency submits an initial Request for Anticipated Payment (RAP), and Medicare then pays 60% of the anticipated cost prior to the provision of services.  The remaining 40% is paid after the provision of services and upon Medicare's receipt of the home health care agency's final claim.

14.     If the beneficiaries are still eligible for home health services after their initial episode of care, they may be re-certified for another 60-day home health episode. For a subsequent (or re-certified) episode, the payment is split 50/50 between the RAP and the final claim.  There is no maximum number of home health episodes that a beneficiary may receive.

15.     In pre-paying the home health care provider, Medicare assumes that a certain minimum number of home health care visits will be necessary for each episode of

care.  If the number of home health care visits falls below the minimum number of expected visits for any 60-day period, the calculations for reimbursement switch to payment on a per-visit basis for that 60-day period.  This results in a lower amount of reimbursement to the home health care agency and sometimes can even require that the home health care agency return money to Medicare.  Consequently, when a home health care agency submits a final claim, it is required to represent whether the minimum number of home health visits were made during the 60-day episode.

16.    Medicare also requires that the home health agency maintain a clinical record of every patient's past and current condition.  In addition to the patient's Plan of Care, the record must include signed and dated clinical progress notes and copies of summary reports sent to the attending physician.  While the form of progress notes may vary, all progress notes must contain the identity of the home health agency employee who performed the visit, the name of the patient, and the type of service performed.

### The Defendants and Three Angels Home Health, Inc.

17.    Grace Munthali formed Three Angels Home Health, Inc. (Three Angels) in Houston, Texas, in or around August 2008.

18.    In or around January 2009, Grace Munthali became the sole owner and administrator of Three Angels.

19.    Three Angels was in the business of providing home health services to Medicare Part A beneficiaries and billing Medicare for the purported services it provided.

20.     On or about June 19, 2013, Three Angels received notification that it had met the requirements for Medicare participation and had been issued Medicare provider number 74-7757.

21.     As of November 14, 2014, Three Angels billed Medicare $3,400,873, and CMS paid Three Angels $2,512,425.

22.     To find eligible Medicare beneficiaries, Grace Munthali paid individuals known as "recruiters" or "marketers" to identify potential Medicare beneficiaries and refer the beneficiaries to Three Angels for the purpose of billing Medicare for home health services.

23.     Between approximately October 2013 and October 2014, **Lizzy Sirls** acted as a recruiter for Three Angels.  She primarily recruited Medicare beneficiaries in the Jacksonville, Texas, Tyler, Texas, and Frankston, Texas, areas.

24.     Between approximately December 2013 and October 2014, **Ronald Russell a/k/a "Petey"** acted as a recruiter for Three Angels.  He primarily recruited Medicare beneficiaries in the Marshall, Texas, and San Augustine, Texas, areas.

25.     Between approximately June 2013 and October 2014, **Yulanda Nash a/k/a "Sugar Momma"** acted as a recruiter for Three Angels.  She primarily recruited Medicare beneficiaries in the Nacogdoches, Texas, area.

26.     Between approximately June 2013 and May 2014, **Pandra Wade** acted as a recruiter for Three Angels.  She primarily recruited Medicare beneficiaries in the Lufkin, Texas, and Jacksonville, Texas, areas.

27.     Between approximately July 2013 and October 2014, **Tammy Washington** acted as a recruiter for Three Angels.  She primarily recruited Medicare beneficiaries in the Nacogdoches, Texas, area.

28.     Between approximately June 2013 and May 2014, **Victoria Sterns** acted as a recruiter for Three Angels.  She primarily recruited Medicare beneficiaries in the Lufkin, Texas, and Nacogdoches, Texas, areas.

29.     Between approximately January 2014 and October 2014, **Latosha Gray a/k/a "Tasha"** acted as a recruiter for Three Angels.  She primarily recruited Medicare beneficiaries in the Jacksonville, Texas, area.

30.     Between approximately July 2013 and December 2013, **Sheneki McCollister** acted as a recruiter for Three Angels.  She primarily recruited Medicare beneficiaries in the Joaquin, Texas, and Tenaha, Texas, areas.

31.     Between approximately July 2013 and May 2014, **Nichelle Fofana** acted as a recruiter for Three Angels.  She primarily recruited Medicare beneficiaries in the Nacogdoches, Texas, area.

32.     Between approximately July 2014 and October 2014, **Katrina Watts** acted as a recruiter for Three Angels.  She primarily recruited Medicare beneficiaries in the San Augustine, Texas, and Nacogdoches, Texas, areas.

33.     Between approximately August 2013 and July 2014, **Meoshe Goodwin** acted as a recruiter for Three Angels.  She primarily recruited Medicare beneficiaries in the Joaquin, Texas, and Tenaha, Texas, areas.

34.     Between approximately September 2013 and October 2014, **Marcus Chukwu** acted as a physical therapy assistant for Three Angels.  He also paid certain Medicare beneficiaries at the direction of Grace Munthali.

### COUNT 1

Violation:  18 U.S.C. § 371
(Conspiracy)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     From in or around May 2013, and continuing thereafter until or about October 2014, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendants, **Ronald Russell a/k/a "Petey," Marcus Chukwu, Lizzy Sirls, Yulanda Nash a/k/a "Sugar Momma," Latosha Gray a/k/a "Tasha," Pandra Wade, Tammy Washington, Victoria Sterns, Sheneki McCollister, Nichelle Fofana, Katrina Watts**, and **Meoshe Goodwin**, knowingly and willfully conspired and agreed with Grace Munthali and others, both known and unknown to the Grand Jury, to commit and abet certain offenses against the United States, namely:

      a.     to violate the Anti-Kickback statute by knowingly and willfully soliciting and receiving any remuneration, including any kickback, directly or indirectly, overtly or covertly, in cash or in kind, in return for referring Medicare beneficiaries to Grace Munthali and Three Angels for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part

under the Medicare program, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A) and

b.     to violate the Anti-Kickback statute by knowingly and willfully offering and paying remuneration, including any kickback, directly or indirectly, overtly or covertly, in cash or in kind, to Medicare beneficiaries to induce the beneficiaries to purchase, lease, order, and arrange for or recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole or in part under the Medicare program, in violation of 42 U.S.C. § 1320a-7b(b)(2)(B).

## Object of the Conspiracy

3.     It was the object of the conspiracy for the defendants and co-conspirators to unlawfully enrich themselves by buying and selling Medicare beneficiary information, including Medicare beneficiary names and Medicare Health Insurance Claim Numbers ("Medicare numbers"), which was then used to bill Medicare for home health services.

## Manner and Means of the Conspiracy

The manner and means by which the defendants and co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.     To find eligible Medicare beneficiaries, Grace Munthali paid kickbacks to her co-conspirators, a/k/a "recruiters" or "marketers," including **Ronald Russell a/k/a**

"Petey," Lizzy Sirls, Yulanda Nash a/k/a "Sugar Momma," Latosha Gray a/k/a "Tasha," Pandra Wade, Tammy Washington, Victoria Sterns, Sheneki McCollister, Nichelle Fofana, Katrina Watts, and Meoshe Goodwin, and others, in exchange for the names and Medicare numbers of eligible Medicare beneficiaries for the purpose of billing Medicare for home health services.

5.     Ronald Russell a/k/a "Petey," Lizzy Sirls, Yulanda Nash a/k/a "Sugar Momma," Latosha Gray a/k/a "Tasha," Pandra Wade, Tammy Washington, Victoria Sterns, Sheneki McCollister, Nichelle Fofana, Katrina Watts, and Meoshe Goodwin and other co-conspirators received kickback payments from Grace Munthali in exchange for the referral of Medicare beneficiaries to Three Angels for the purpose of billing Medicare for home health services purportedly provided to those beneficiaries.

6.     Ronald Russell a/k/a "Petey," Marcus Chukwu, Lizzy Sirls, Yulanda Nash a/k/a "Sugar Momma," Latosha Gray a/k/a "Tasha," Pandra Wade, Tammy Washington, Victoria Sterns, Sheneki McCollister, Nichelle Fofana, Katrina Watts, and Meoshe Goodwin and other co-conspirators paid kickback payments to Medicare beneficiaries whom they solicited for the purpose of arranging for home health services purportedly provided to those beneficiaries.

7.     Grace Munthali would pay a recruiter, usually $500, for each qualified Medicare beneficiary that the recruiter signed up for home health services from Three Angels.  Of that amount, the recruiter would provide between $100 and $200 cash to the Medicare beneficiary to induce the beneficiary to sign up for home health services from

Three Angels.  Often times, the Medicare beneficiary was promised additional periodic payments of $100 in the future.

8.     In many instances, the defendants and other co-conspirators recruited Medicare beneficiaries that were not eligible for home health services because the beneficiaries' primary physicians would not certify that home health services were medically necessary.  Three Angels billed Medicare despite such refusals.

### Overt Acts

9.     In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Eastern District of Texas, and elsewhere:

a.     On or about July 11, 2013, **Yulanda Nash a/k/a "Sugar Momma"** sent a text message to Grace Munthali containing the name, social security number, and date of birth of Medicare beneficiary E.T., who resided in Nacogdoches, Texas;

b.     On or about July 19, 2013, in Nacogdoches, Texas, **Yulanda Nash a/k/a "Sugar Momma"** paid Medicare beneficiary E.T. $200 to sign up for home health services with Three Angels;

c.     On or about July 31, 2013, **Nichelle Fofana** sent a text message to Grace Munthali containing the name, date of birth, and Medicare number of Medicare beneficiary W.W., who resided in Nacogdoches, Texas;

d.      On or about July 31, 2013, **Sheneki McCollister** sent a text message to Grace Munthali containing the name, address, date of birth, and social security number of Medicare beneficiary C.G., who resided in Tenaha, Texas;

e.      On or about August 14, 2013, **Pandra Wade** sent a text message to Grace Munthali containing the name, date of birth, and Medicare number of Medicare beneficiary G.W., who resided in Jacksonville, Texas;

f.      On or about September 9, 2013, **Victoria Sterns** offered Medicare beneficiary T.P. $100 for his Medicare information and for him to sign up for home health services with Three Angels;

g.      On or about September 20, 2013, **Tammy Washington** sent a text message to Grace Munthali containing the name, date of birth, and Medicare number of Medicare beneficiary H.S., who resided in Nacogdoches, Texas;

h.      On or about October 12, 2013, **Ronald Russell a/k/a "Petey"** and Grace Munthali visited the home of Medicare beneficiary L.R. in Marshall, Texas;

i.      On or about December 17, 2013, **Meoshe Goodwin** sent a text message to Grace Munthali containing the name, date of birth, social

security number, address, and Medicare number of Medicare beneficiary D.S., who resided in Tenaha, Texas;

j.    On or about February 14, 2014, **Ronald Russell a/k/a "Petey"** sent a text message to Grace Munthali concerning payments to Medicare beneficiaries L.R., J.A., and L.T.;

k.    On or about June 2, 2014, **Latosha Gray a/k/a "Tasha"** sent a text message to Grace Munthali containing the name, date of birth, and Medicare number of Medicare beneficiary D.F., who resided in Jacksonville, Texas;

l.    On or about June 6, 2014, **Latosha Gray a/k/a "Tasha"** and Grace Munthali visited the home of Medicare beneficiary D.F. in Jacksonville, Texas;

m.    On or about June 6, 2014, **Latosha Gray a/k/a "Tasha"** and Grace Munthali offered Medicare beneficiary D.F. $200 to sign up for home health services with Three Angels;

n.    On or about July 7, 2014, **Lizzy Sirls** sent a text message to Grace Munthali containing the name, date of birth, and Medicare number of Medicare beneficiary J.S., who resided in Tyler, Texas;

o.    On or about July 24, 2014, Grace Munthali sent a text message to **Marcus Chukwu** about paying Medicare beneficiary T.R.; and

p.    On or about September 11, 2014, **Katrina Watts** sent a text message to Grace Munthali about being paid for Three Angels filing on her Medicare.

All in violation of 18 U.S.C. § 371.

## COUNTS 2-18

Violation:  42 U.S.C. § 1320a-7b(b)(2)(B) (Offer and Payment of Illegal Remuneration) and 18 U.S.C. § 2 (Aiding and Abetting)

1.    The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.    On or about the dates listed below, in the Eastern District of Texas, and elsewhere, the individual defendant identified in each count below, aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully offer to pay and did pay remuneration directly and indirectly, overtly and covertly, in cash and in kind to the Medicare beneficiaries listed below in order to induce those beneficiaries to arrange for home health services with Three Angels, a service for which payment may be made in whole or in part under a federal health care program, namely Medicare.

| Count | Defendant | Name of Medicare Beneficiary Offered Cash By the Defendant | Approximate Date Defendant Offered Cash To Medicare Beneficiary | Amount Medicare Paid Three Angels For This Beneficiary |
|---|---|---|---|---|
| 2 | Lizzy Sirls | R.S. | August 12, 2014 | $2,897.75 |
| 3 | Lizzy Sirls | J.S. | July 11, 2014 | $2,718.56 |
| 4 | Lizzy Sirls | C.C. | August 26, 2014 | $840.72 |
| 5 | Yulanda Nash a/k/a "Sugar Momma" | R.S. | July 16, 2013 | $2,386.02 |
| 6 | Yulanda Nash a/k/a "Sugar Momma" | E.T. | July 19, 2013 | $15,800.42 |
| 7 | Latosha Gray a/k/a "Tasha" | D.F. | June 6, 2014 | $5,063.02 |
| 8 | Ronald Russell a/k/a "Petey" | J.W. | October 26, 2013 | $9,265.75 |

| Count | Defendant | Name of Medicare Beneficiary Offered Cash By the Defendant | Approximate Date Defendant Offered Cash To Medicare Beneficiary | Amount Medicare Paid Three Angels For This Beneficiary |
|-------|-----------|-----------------------------------------------------------|----------------------------------------------------------------|--------------------------------------------------------|
| 9 | Ronald Russell a/k/a "Petey" | L.R. | October 12, 2013 | $8,783.52 |
| 10 | Victoria Sterns | T.P. | September 9, 2013 | $6,355.52 |
| 11 | Katrina Watts | J.T. | July 17, 2013 | $11,176.69 |
| 12 | Nichelle Fofana | W.W. | August 2, 2013 | $19,192.20 |
| 13 | Nichelle Fofana | C.W. | August 2, 2013 | $18,692.18 |
| 14 | Tammy Washington | H.S. | September 20, 2013 | $10,625.45 |
| 15 | Pandra Wade | G.W. | August 30, 2013 | $11,829.00 |

| Count | Defendant | Name of Medicare Beneficiary Offered Cash By the Defendant | Approximate Date Defendant Offered Cash To Medicare Beneficiary | Amount Medicare Paid Three Angels For This Beneficiary |
|---|---|---|---|---|
| 16 | Pandra Wade | C.D. | July 12, 2013 | $7,667.69 |
| 17 | Meoshe Goodwin | D.S. | December 20, 2013 | $12,802.17 |
| 18 | Sheneki McCollister | C.G. | August 9, 2013 | $9,385.16 |

All in violation of 42 U.S.C. § 1320a-7b(b)(2)(B) and 18 U.S.C. § 2.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
### Pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(7)

1.    The allegations contained in Counts 1 through 18 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest.

2.    Upon conviction of any violation of 42 U.S.C. § 1320a-7b(b)(2), the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," or a conspiracy to commit such offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

3.    Upon conviction of any violation of 42 U.S.C. § 1320a-7b(b)(2), or a conspiracy to commit such violations, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 982(a)(7).

4.    Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendants:

      a.  Cannot be located upon the exercise of due diligence;

      b.  Has been transferred, or sold to, or deposited with a third party;

      c.  Has been placed beyond the jurisdiction of the Court;

    d.  Has been substantially diminished in value; or

    e.  Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendants up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the names of the defendants.

    5.    By virtue of the commission of the offenses alleged in this Indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(7).

    All pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(7) and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

A TRUE BILL

_____
GRAND JURY FOREPERSON

_____
Date  9-16-15

JOHN M. BALES
UNITED STATES ATTORNEY

KENNETH C. MCGURK
SPECIAL ASSISTANT UNITED STATES ATTORNEY

**Indictment – Page 21**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 6:15-CR-__ |
| | § | |
| RONALD RUSSELL a/k/a "Petey" (1), | § | |
| MARCUS CHUKWU (2); | § | |
| LIZZY SIRLS (3); | § | |
| YULANDA NASH a/k/a "Sugar Momma" (4); | § | |
| LATOSHA GRAY a/k/a "Tasha" (5); | § | |
| PANDRA WADE (6); | § | |
| TAMMY WASHINGTON (7); | § | |
| VICTORIA STERNS (8); | § | |
| SHENEKI MCCOLLISTER (9); | § | |
| NICHELLE FOFANA (10); | § | |
| KATRINA WATTS (11); | § | |
| and MEOSHE GOODWIN (12). | § | |

## NOTICE OF PENALTY

## COUNT 1

VIOLATION:            Title 18, United States Code, Section 371
Conspiracy

PENALTY:            Imprisonment of not more than five (5) years; the greater of a
fine not to exceed $250,000, two times the gross gain to the
Defendant, or two times the loss to the victim; or both such
imprisonment and fine; and a term of supervised release of
not more than three (3) years.

SPECIAL ASSESSMENT: $100.00 each count

## COUNTS 2 – 18

VIOLATION:            Title 42, United States Code, Section 1320a-7b(b)(2)(B)
Offer and Payment of Illegal Remuneration

PENALTY:               Imprisonment of not more than five (5) years; the greater of a
                       fine not to exceed $250,000, two times the gross gain to the
                       Defendant, or two times the loss to the victim; or both such
                       imprisonment and fine; and a term of supervised release of
                       not more than three (3) years.

SPECIAL ASSESSMENT: $100.00 each count

**Indictment – Page 23**